Mamo Pittoni, J.
The plaintiff sues to recover a $4,000 deposit he paid on June 18, 1957 when he contracted to buy the defendants’ house for $37,000.
The contract was a standard printed form, but among the typewritten additions was paragraph 5 which read as follows: “ 5. The sellers warrant that the cellar of the premises herein conveyed, exclusive of the windows and ceiling thereof shall be free from the seepage of water for a period of three months from the date of the delivery of the deed, said warranty to survive the passage of title and delivery of deed.”
It appears that on June 6, 1957 the plaintiff gave the defendants a binder and that between that date and the contract date, June 18, 1957, the plaintiff found water in the cellar of the house. He had some discussions with the defendants about this and was given certain reasons for the presence of the water. None was seepage.” Nevertheless, before the contract was signed, the plaintiff insisted on a clause to protect him against seepage; whereupon, the attorneys for the respective parties drafted the paragraph 5 now in issue. The plaintiff thereafter retained a professional consulting engineer, Arthur Taucher (his qualifications were conceded by the defendants). He inspected the cellar of the house on July 26, 1957 and, among other findings, he discovered that: ‘ There was definite evidence of moisture penetration through the basement walls and stains on the floor and wetness in one or two of the corners of the basement near the wooden partitions. The manifestation of the moisture penetration through the walls was evidenced by the softness and scaliness of the concrete. Now, in all concrete that is not affected by water pushing through from one side to the other, from say outside to inside, you can rub your hand on it and it may be rough but nothing comes off. In this case when one did that, rubbing his hand on the concrete, one would get a whole handful of sand in small gravel particles brushed down. Now the only way that that could happen or be caused to happen, that scaliness and this sand coming down, is from the penetration of water in this particular case from the outside through to the inside whereby the water has washed away the particles *526 of cement which is the binder in concrete, leaving the heavier products of the sand and small gravel particles.”
This expert testified further that the stains were caused by water seepage through the walls and that all this was due to improper waterproofing and poor quality concrete. He expressed his expert opinion that to correct this situation an exterior re-excavation and waterproofing costing between $2,200 and $2,700 would be necessary. He further said that additional protection against seepage, that is, a French type drainage system, would cost $1,200 to $1,600 more. This expert testified further that what he found on the walls was actual water wetness and that without question this condition was due to water seepage.
Against this was the testimony of the defendant, Marilyn Goldwasser, a lady with no expert background, who said that the water in the cellar was due to hurricane rain water that came in from the window well and from a broken washing machine hose.
There was also the testimony of a subsequent purchaser, who did not move in until January, 1958, who said he saw water in the cellar once in the Fall of 1957, after a heavy rain, and water dampness on the walls under the windows; and also the testimony of the defendants’ attorney and a defendant’s father that on July 30,1957 they inspected the cellar and found no dampness except a puddle near the oil burner; and that the only other evidence they perceived were stains on the walls about two feet from the floor and scalings of coating on the cement blocks.
On the basis of this evidence the court finds that on July 26, 1957 there was seepage and that the cellar was not “ free from seepage of water.” The court feels that the expert engineer was in a far better position to observe and recognize “ seepage ” than the laymen witnesses who testified on behalf of the defendants.
Be that as it may, the plaintiff’s attorney notified the defendants’ lawyer of the engineer’s findings and later, on the day of the closing, July 30,1957, the plaintiff and his attorney appeared at the closing office and made three written suggestions. They were:
(1) Postpone the closing of title for two months to give the defendants an opportunity to remedy the seepage condition;
(2) Rescind the contract and return the $4,000 deposit; or
(3) Close title on that date, July 30, 1957, but hold the $4,000 in escrow to cover possible costs of repairs which were to be completed within two months of the closing date.
The defendants refused to consider any of these alternatives, insisted on closing title immediately, tendered their deed to the *527 plaintiff, kept the $4,000 deposit and have since sold the subject property for $37,000 the same as the original price.
It is fundamental that the prior condition of an object or a place is good evidence of the subsequent condition of that object or place; therefore, the court finds that the condition of seepage in the cellar on July 26, 1957 carried over and existed on the date of the closing, July 30, 1957, and thereafter. (Richardson on Evidence [8th ed.], § 198.)
We now return to paragraph 5. It was jointly drafted by the attorneys for the respective parties; therefore, we must analyze and interpret it on the basis of its own inartistic language without in any way interpreting it for or against either party. When the plaintiff asked for a seepage clause, clearly, he could not have been interested merely in a three-month protection. The three months was a reasonable period in which seepage could be discovered. It was discovered several days before the closing date and continued after the closing date. Upon such discovery the plaintiff was reasonable in suggesting his three alternatives. The defendants were and are unreasonable-. They were notified of the expert’s findings. They insisted on closing without delay or concession, and they have kept the $4,000 even though they sold, the house not long thereafter for the very same $37,000 contracted for with the plaintiff. True, the plaintiff would not be entitled to the return of the $4,000 merely because the defendants sold the house- to a subsequent purchaser at no loss; but here we have a situation where the defendants are unable to deliver a house contracted for, a house with a cellar ‘ ‘ free from seepage of water.” That is what paragraph 5 means, that the parties contracted for the purchase and sale of a house with a cellar “ free from seepage of water.” The defendants could not deliver such a house, the discrepancy was substantial, the defendants were in default, and the plaintiff is entitled to the return of his $4,000.
Another fundamental principle is that a party should not be required to perform a useless act. The defendants seem to argue that paragraph 5 is not enforcible because title was not passed on the closing date and that this paragraph 5 was effective only during the three-month period following the closing date. It would be a useless and foolish act for the plaintiff to take title, commit himself to a mortgage, pay the defendants the balance in cash and then sue for a breach of warranty when he knew before the closing date that the defendants could not perform by delivery of a house with a cellar free from seepage. Thus, even on the theory of warranty, the principle to be *528 followed is as stated in the Restatement of the Law of Contracts (§ 306, comment [a]): “No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition.”
Judgment will be entered in favor of the plaintiff in the amount of $4,000, plus interest from June 18,1957, and for $183, the cost of the title search.
The cause of action based on fraud is not sustainable for lack of sufficient evidence of intent to defraud. This second cause of action is, therefore, dismissed. Judgment is, therefore, granted in favor of the plaintiff on the first cause of action as previously stated. The counterclaim is dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit judgment on notice.